UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Laura Singletary and Kadijah Singletary, | ) ) ) | Civil Action No.:_____ |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | **COMPLAINT** |
| Hyundai Capital America f/k/a Hyundai Motor Finance Company, and Dealer Loyalty Protection, Inc., | ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |
| _____ | ) | |

## COMPLAINT

1.    This is an action brought by Plaintiffs, Laura Singletary and Kadijah Singletary, for actual damages, treble damages, attorney's fees, and costs for Defendants' violations of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §39-5-10, *et seq*. ("SCUTPA). Plaintiffs also seek compensatory and punitive damages for the Defendants' violations of South Carolina common law as set forth herein.

## JURISDICTION AND VENUE

2.    This Court has Jurisdiction under 28 U.S.C. §1331 and §1367.

3.    Venue is proper in the Florence Division because the Plaintiff resides in Florence County, and the Defendants transacted business throughout South Carolina and in this division.

## PARTIES

4.    Plaintiff, Laura Singletary, is a resident and citizen of the State of South Carolina,

1

Florence County, and is over the age of twenty-one (21) years.

5.     Plaintiff, Kadijah Singletary, is a resident and citizen of the State of South Carolina Florence County, and is over the age of twenty-one (21) years.

6.     Defendant Hyundai Capital America ("Hyundai") is a California corporation that may be served with process through its Registered Agent, National Registered Agents Inc, 2 Office Park Ct, Suite 103, Columbia, South Carolina 29223.  In all respects and at all times relevant herein, Defendant Hyundai was doing business in the State of South Carolina and in this division.  Specifically, Defendant Hyundai offers vehicle financing to consumers throughout South Carolina and accepts payments from South Carolina consumers.  Therefore, Defendant Hyundai is subject to the jurisdiction of this Court.

7.     Defendant Dealer Loyalty Protection, Inc. ("DLP") is a Wyoming corporation that may be served with process through its Registered Agent, Registered Agents, Inc., 6650 Rivers Avenue, Suite 100, Charleston, South Carolina 29406.  In all respects and at all times relevant herein, Defendant DLP was doing business in the State of South Carolina and in this division.  Specifically, Defendant DLP offers GAP Addendums to South Carolina consumers and accepts payments from South Carolina consumers.  Therefore, Defendant DLP is subject to the jurisdiction of this Court.

## FACTUAL ALLEGATIONS

8.     On January 7, 2023, Plaintiffs purchased a 2020 Hyundai Elantra SEL from ALM Hyundai in Florence, South Carolina.  The vehicle was financed through Hyundai Motor Finance, Account No. 20230101838872 (hereinafter the "Account"), for $22,400.00.  A GAP addendum was also purchased at the time of financing through Dealer Loyalty

2

Protection in the amount of $700.00.

9.    On April 19, 2024, the vehicle was involved in an automobile accident resulting in the vehicle being rendered a total loss by Progressive Insurance (hereinafter "Progressive").

10.    On or about May 1, 2024, Progressive sent a check to Defendant Hyundai in the amount of $13,484.92.  Said check did not cover the entire remaining balance due on the Account.

11.    Thereafter, Plaintiffs sought to obtain the GAP benefit funds to cover the remaining balance due on the Account.  In July 2024, Defendant DLP informed Plaintiffs that it required a copy of the insurance check Progressive sent to Defendant Hyundai before a claim for GAP benefits could be processed.  Specifically, Defendant DLP required a copy of the front and back of the check from Progressive.

12.     Plaintiffs immediately contacted Defendant Hyundai and requested a copy of the front and back of the insurance check from Progressive so it could be provided to Defendant DLP and payment for the remaining balance of the loan could be issued.

13.    Defendant Hyundai refused to provide Plaintiffs with a copy of the insurance check.

14.    On or about July 30, 2024, Defendant Hyundai sent Plaintiff Laura Singletary a letter stating all funds received from the total loss claim were applied to the Account, but a remaining balance of $19,101.36 was still owing.  This letter also informed Plaintiff that Defendant Hyundai had not received a payment from the GAP provider and instructed Plaintiff to "urgently" follow up with their GAP provider to determine if additional information was needed to ensure prompt payment of any GAP benefits. The letter requested payment of the $19,101.36 be sent to Defendant Hyundai within 30 days of the

date of the letter.

15.    At the time Defendant Hyundai sent this letter to Plaintiff Laura Singletary, she had already requested a copy of the front and back of the Progressive check from Defendant Hyundai so that it could be provided to Defendant DLP for a claim.

16.    The next day, on or about July 31, 2024, Defendant Hyundai sent Plaintiff Laura Singletary a letter identical to its July 30, 2024, letter, wherein Defendant Hyundai stated that all funds received from the total loss claim were applied to the Account, but a remaining balance of $19,101.36 was still owing.  This letter also informed Plaintiff that Defendant Hyundai had not received a payment from the GAP provider and instructed Plaintiff to "urgently" follow up with their GAP provider to determine if additional information was needed to ensure prompt payment of any GAP benefits. The letter requested payment of the $19,101.36 be sent to Defendant Hyundai within 30 days of the date of the letter.

17.    At the time Defendant Hyundai sent this second letter to Plaintiff Laura Singletary, she had already requested a copy of the front and back of the Progressive check from Defendant Hyundai so that it could be provided to Defendant DLP for a claim.

18.    Contrary to Defendant Hyundai's letters, it did not actually credit Plaintiffs' Account until September 2024.

19.    In September 2024, after Defendant Hyundai finally credited the Progressive Insurance payment to Plaintiffs' account, Plaintiffs finally received a copy of the front and back of the insurance check.  Plaintiffs promptly provided same to Defendant DLP. However, upon receipt of the front and back of the Progressive check, Defendant DLP

4

claimed it was "too late" and refused to pay the GAP benefits on behalf of Plaintiffs.

20.     On or about October 7, 2025, Plaintiff Laura Singletary received a letter from TransWorld Systems, Inc. (hereinafter "TSI"), a debt collector, stating it was trying to collect a debt owed to Defendant Hyundai.  In its letter, TSI indicated Plaintiff owed Defendant Hyundai $5,583.44.

21.     Plaintiff responded to TSI's October 7, 2025, letter disputing that she owed the $5,583.44 because Defendant DLP was supposed to pay $5,000 per her GAP benefits. Specifically, Plaintiff informed TSI that she had purchased GAP benefits which was to pay $5,000 to the original creditor.  Progressive paid $13,848.92 in May 2024.  Defendant DLP was to pay the remaining balance but would not pay until it received a copy of the proof of payment by Progressive which Defendant Hyundai would not supply.  Plaintiff specifically refused to pay the debt to TSI as she did not owe the debt.

22.     As a result of Defendant Hyundai's refusal to provide Plaintiff with a copy of the front and back of the insurance check in a timely manner, once Defendant DLP finally did receive a copy of the check, it claimed it was too late and refused to pay the GAP benefits.

23.     The Account is now reporting on Plaintiffs' credit reports as a charged-off account, with a balance due of $5,583.

24.     Defendant Hyundai, by and through its dealerships, regularly offers Defendant DLP's GAP Addendum benefits to its consumers purchasing a vehicle.

25.     Defendants Hyundai and DLP benefit financially from the sale of DLP's GAP benefits.

26.     On or about November 12, 2025, Plaintiff Laura Singletary requested copies of her

credit reports.

27.     On or about November 18, 2025, Plaintiff Laura Singletary obtained a copy of her Experian credit report. Defendant Hyundai was reporting the Account as a charged-off account in October 2024, with $5,583 written off and $5,583 past due.

28.     On or about November 18, 2025, Co-Plaintiff obtained a copy of her Experian credit report.  Defendant Hyundai was reporting the Account as a charged-off account in October 2024, with $5,583 written off and $5,583 past due.

29.     On or about November 18, 2025, Plaintiff obtained a copy of her TransUnion credit report.  The Account was reporting under Kia Motors Finance as a charged-off account in October 2024, with a charge off amount of $5,583.

30.     On or about November 18, 2025, Co-Plaintiff obtained a copy of her TransUnion credit report.  The Account was reporting under Kia Motors Finance as a charged-off account in October 2024, with a charge off amount of $5,583.

31.     On or about December 4, 2025, in response to Plaintiff's refusal to pay, TSI sent a letter to Plaintiff providing materials it obtained from Defendant Hyundai.

32.     Defendant Hyundai intentionally delayed depositing and applying the funds from Progressive Insurance to the Plaintiffs' account so that Plaintiffs' ability to obtain GAP benefits would be hindered.

33.     Defendant DLP intentionally demanded a copy of the front and back of the Progressive insurance check, knowing that Defendant Hyundai was holding the check, so that Plaintiffs time for obtaining the GAP benefits would expire.

34.     Defendants worked together to deprive Plaintiffs of the benefits to which they were

entitled to under both the contract with Defendant Hyundai as well as the agreement with Defendant DLP.

## COUNT ONE
### (Violation of the South Carolina Unfair Trade Practices Act)

35. The Plaintiffs hereby adopt, to the extent same are consistent with the allegations contained herein, all of the allegations set forth in paragraphs 8 through 34 as if set forth fully herein.

36. Defendants' conduct amounts to unfair methods of competition and unfair and deceptive acts or practices in the conduct of trade or commerce as defined by South Carolina Code §39-5-10, *et. seq.* (As amended).

37. Defendants knowingly, willfully, unfairly, deceptively, and/or negligently engaged in unfair and deceptive practices, as described herein.

38. Specifically, Defendant Hyundai delayed in processing and applying the insurance check from Progressive Insurance so that Plaintiffs were significantly delayed in obtaining a copy of the front and back of the paid check to provide to Defendant DLP.

39. Defendant DLP specifically demanded a copy of the front and back of the paid check knowing that Defendant Hyundai would hold the check for more than four months so that Plaintiffs' time to obtain the GAP benefits would expire.

40. Defendants worked together to intentionally, willfully, unfairly and deceptively deprive Plaintiffs the GAP benefits to which they were entitled.

41. Plaintiffs further allege that the actions of Defendants have a real and substantial potential for repetition and affect the public interest. Upon information and belief,

Defendant Hyundai provides financing for hundreds, if not thousands, of South Carolina consumers. Included in that financing is the GAP addendum offered by Defendant DLP. As both Defendants regularly do business throughout the State of South Carolina and both Defendants are actively doing business at the time of the filing of this Complaint, the actions of Defendants have a real and substantial potential for repetition.

42. Plaintiffs have suffered an ascertainable loss due to the unlawful actions of Defendants and are entitled, under § 39-5-140, to recover actual damages in an amount to be proven at trial, treble said actual damages for Defendants' knowing and willful behavior, and an award of reasonable attorney's fees and costs.

43. Defendants' use or employment of unfair and/or deceptive methods, acts, and practices caused Plaintiffs to suffer lost opportunities to receive credit, damage to reputation and credit reputation, worry, anxiety, physical sickness, physical pain, headaches, loss of sleep, distress, loss of enjoyment of life, frustration, embarrassment, and humiliation. Additionally, Plaintiffs suffered out-of-pocket losses, including, but not limited to the lost GAP benefits of $5,000, additional interest which was added to the Account during the delay in the insurance proceeds being applied, time lost seeking the cancelled check and GAP benefits from Defendants, postage costs, and other losses. Defendants' use or employment of unfair or deceptive methods, acts, and practices was willful, wanton, and knowing. Therefore, Plaintiffs are informed and believe that they are entitled to an award of three (3) times the actual damages sustained. Plaintiffs are also entitled to attorneys' fees and costs.

## COUNT TWO
### (Breach of Contract)

44.     The Plaintiffs adopt the averments and allegations of paragraphs 8 through 43 hereinbefore as if fully set forth herein.

45.     Defendants have repeatedly violated the terms of the contracts with Plaintiffs and have refused to perform without legal excuse.

46.     The actions of Defendants constitute a breach of the aforementioned contracts.

47.     As a consequence of Defendants' breach of contract, Plaintiffs have suffered injuries that may be recovered by way of a judgment for the recovery of contract damages against Defendants.

## COUNT THREE
### (Negligence)

48.     Plaintiffs hereby adopt, to the extent same are consistent with the allegations contained herein, all of the allegations set forth in paragraphs 8 through 47 as if set forth fully herein.

49.     Defendants breached their duty of care owed to Plaintiffs by failing to act in good faith and with fair dealing.  Defendant Hyundai intentionally held the insurance proceeds settlement check for over four months and refused to apply the proceeds of that check to Plaintiffs' Account.  During that time, Plaintiffs Account continued incurring interest charges which increased the total amount due.

50.     Defendant DLP breached its duty of care to Plaintiffs by wrongfully refusing to accept Plaintiffs' claim for GAP benefits despite timely receipt of Plaintiffs' claim, and subsequent receipt of the proof of payment.

9

51.    As a result of Defendants' negligence, Plaintiffs were denied the GAP benefits to which they were entitled, suffered additional interest charges on the Account, were turned over to collections, and have had their credit reputation drastically impacted for the worse.

52.    As a proximate consequence of said negligence, Plaintiffs have also suffered lost opportunities to receive credit, damage to reputation and credit reputation, worry, anxiety, physical sickness, physical pain, headaches, loss of sleep, distress, loss of enjoyment of life, frustration, embarrassment, and humiliation for which Plaintiffs claim compensatory damages.

**COUNT FOUR**
**(Willfulness, Recklessness and Wantonness)**

53.    Plaintiffs hereby adopt, to the extent same are consistent with the allegations contained herein, all of the allegations set forth in paragraphs 8 through 42 as if set forth fully herein.

54.    Defendants owed a duty of care to Plaintiffs.

55.    Defendants willfully, recklessly and wantonly breached their duty of care owed to Plaintiffs by failing to act in good faith and with fair dealing.

56.    Defendant Hyundai intentionally held the insurance proceeds settlement check for over four months and refused to apply the proceeds of that check to Plaintiffs' Account. During that time, Plaintiffs Account continued incurring interest charges which increased the total amount due.

57.    Defendant DLP breached its duty of care to Plaintiffs by wrongfully refusing to accept Plaintiffs' claim for GAP benefits despite timely receipt of Plaintiffs' claim, and

10

subsequent receipt of the proof of payment.

58.     As a result of Defendants' willfulness, recklessness and wantonness, Plaintiffs were denied the GAP benefits to which they were entitled, suffered additional interest charges on the Account, were turned over to collections, and have had their credit reputation drastically impacted for the worse.

59.     As a proximate consequence of said willfulness, recklessness, and/or wantonness, Plaintiffs have also suffered lost opportunities to receive credit, damage to reputation and credit reputation, worry, anxiety, physical sickness, physical pain, headaches, loss of sleep, distress, loss of enjoyment of life, frustration, embarrassment, and humiliation for which Plaintiffs claim compensatory and punitive damages.

## COUNT FIVE
### (Negligent Training and Supervision)

60.     Plaintiffs hereby adopt, to the extent same are consistent with the allegations contained herein, all of the allegations set forth in paragraphs 8 through 59 as if set forth fully herein.

61.     Defendants owed Plaintiffs a duty to properly train and supervise its employees to ensure compliance with South Carolina law and specifically the SCUTPA.  Defendants knew or should have known of their inadequate training and supervision.  If Defendants had properly trained and supervised its employees and/or agents, the conduct set forth herein which was directed at and visited upon Plaintiffs would not have occurred.

62.     Defendants knew or should have known that the conduct of its employees and/or agents was improper and was in violation of South Carolina law.

11

63.     Defendants negligently failed to train and supervise its employees and/or agents in order to prevent said improper conduct.

64.     As a result of Defendants' negligence, Plaintiffs suffered lost GAP benefits, incurred additional interest expenses, were turned over to collection, lost opportunities to receive credit, suffered damage to their reputations and credit reputations, and suffered worry, anxiety, physical sickness, physical pain, headaches, loss of sleep, distress, loss of enjoyment of life, frustration, embarrassment, and humiliation for which Plaintiffs seek compensatory damages.

## COUNT SIX
### (Reckless and Wanton Training and Supervision)

65.     Plaintiffs hereby adopt, to the extent same are consistent with the allegations contained herein, all of the allegations set forth in paragraphs 8 through 64 as if set forth fully herein.

66.     Defendants owed Plaintiffs a duty to properly train and supervise its employees to ensure compliance with South Carolina law and specifically SCUPTA.  Defendants knew or should have known of their inadequate training and supervision.  If Defendants had properly trained and supervised its employees and/or agents, the conduct set forth herein which was directed at and visited upon Plaintiffs would not have occurred.

67.     Defendants knew or should have known that the conduct of its employees and/or agents was improper and was in violation of South Carolina law.

68.     Defendants recklessly and wantonly failed to train and supervise its employees and/or agents in order to prevent said improper conduct.

12

69.     As a result of Defendants' recklessness and wantonness, Plaintiffs suffered lost GAP benefits, incurred additional interest expenses, were turned over to collection, lost opportunities to receive credit, suffered damage to their reputations and credit reputations, and suffered worry, anxiety, physical sickness, physical pain, headaches, loss of sleep, distress, loss of enjoyment of life, frustration, embarrassment, and humiliation for which Plaintiffs seek compensatory and punitive damages.

## COUNT SEVEN
### (Conspiracy)

70.     Plaintiffs hereby adopt all of the allegations set forth in paragraphs 8 through 69 as if set forth fully herein.

71.     Defendants combined or agreed to commit the acts set forth herein.

72.     Defendants committed an overt act in furtherance of its agreement or combination. Defendants' overt actions include, but are not necessarily limited to, delaying the processing of the Progressive insurance check so that Plaintiffs could not obtain a copy of the cancelled check to timely provide to Defendant DLP and Defendant DLP's wrongful denial of GAP benefits.

73.     Due to the conduct of Defendants, Plaintiffs have been caused to suffer lost GAP benefits of $5,000, suffered increased interest expense on the Account due to the delay in applying the insurance proceeds, suffered damages to their credit, lost credit opportunities, suffered damage to their reputation and credit reputation, and suffered worry, anxiety, physical sickness, physical pain, headaches, loss of sleep, distress, loss of enjoyment of life, frustration, embarrassment, and humiliation for which Plaintiffs seek compensatory

13

damages.

74.     Plaintiffs further assert that the actions of Defendants were willful and, therefore, Plaintiffs seeks an award of punitive damages.

**COUNT EIGHT**
**(Tortious Interference with a Contract or Prospective Contractual Relationship – Defendant Hyundai Motor Finance)**

75.     Plaintiffs hereby adopt all of the allegations set forth in paragraphs 8 through 74 as if set forth fully herein.

76.     Contracts or potential contractual relationships existed between Plaintiffs and Defendant DLP.

77.     Defendant Hyundai knew of this contract or potential contract between Plaintiffs and Defendant DLP.

78.     Defendant Hyundai tortiously interfered with this contract by intentionally and willfully holding the Progressive Insurance proceeds check and delaying in processing that check.  As a result, Plaintiffs were denied the benefit of those funds to their Account, and were charged additional interest on the Account.  Additionally, Plaintiffs were denied access to a copy of the cancelled check to provide to Defendant DLP in a timely manner which resulted in Plaintiffs being denied the GAP benefits of $5,000.  Finally, as a result of Defendant Hyundai tortious inference with Plaintiffs' GAP benefits, Plaintiffs have suffered harm to their credit and credit reputation, lost credit opportunities, suffered a decrease in their credit scores, and suffered other damages as set forth above.

79.     There was no lawful justification for Defendant Hyundai's interference and its interference caused Plaintiffs damage.

14

80.     Plaintiffs are entitled to judgment against Defendant Hyundai in the amount of their actual, compensatory, and punitive damages, as may be determined by a struck jury.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demands a judgment against Defendants for the following:

A.     For actual damages, trebled due to Defendants' willfulness, as well as attorneys' fees and costs, pursuant to S.C. Code Ann. §39-5-140, for Defendants' violations of the South Carolina Unfair Trade Practices Act;

B.     For compensatory and, where available, punitive damages in an amount to be determined by a struck jury for Defendants' Breach of Contract, Negligence, Willfulness, Reckless, and Wantonness, Negligent Training and Supervision, Reckless and Wanton Training and Supervision, Conspiracy, and Defendant Hyundai's Tortious Interference with a Contract tor Prospective Contractual Relationship;

C.     For this trial to be heard by a jury; and

D.     For all such other and further relief as the Court may deem just and proper.

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed. ID No. 10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

15

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

                                    */s/ Penny Hays Cauley*
                                    Of Counsel

**<u>DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL</u>**
Hyundai Capital
c/o  National Registered Agents Inc. – Registered Agent
2 Office Park Ct, Suite 103
Columbia, South Carolina 29223

Dealer Loyalty Protection, Inc.
c/o Registered Agents, Inc. – Registered Agent
6650 Rivers Avenue, Suite 100
Charleston, South Carolina 29406